**BEE WINDOW, INC., Appellant–Defendant,**

v.

**STOUGH ENTERPRISES, INC., and Indianapolis Blood Plasma, Inc., Appellees–Plaintiffs.**

No. 49A02–9706–CV–371.

Court of Appeals of Indiana.

July 30, 1998.

Rehearing Denied Oct. 1, 1998.

dustries.[1] As constructed, the vinyl material proved unsuitable and the windows rattled, leaked rain and deflected inward and outward up to seven inches during windstorms.

Michael Stough complained to Bee Window and withheld payment of $2,585.00, the balance due on the contract. Despite repeated complaints, Bee Window failed to cure the defective window system; thus, in 1993, Indianapolis Blood Plasma, Inc. and Stough Enterprises, Inc. (collectively "Stough") filed suit for breach of contract. Following a bench trial, the court awarded Stough $45,-615.00 in damages, then denied Bee Window's motion to correct error. Bee Window appeals that decision raising two restated issues for our review:

I.  Whether the trial court's determination that Bee Window breached its contract is clearly erroneous.

II. Whether the $45,615.00 damage award lies within the scope of the evidence.

We affirm.

### I.

### Breach of Contract

Bee Window first contends the trial court erred in ruling it had breached its contract with Stough. Initially we recognize that, in this appeal from a bench trial, we will not set aside the findings or judgment unless clearly erroneous, and we give "due regard" to the opportunity of the trial court to judge the witnesses' credibility. Ind. Trial Rule 52(A). A finding of fact is clearly erroneous when there is no evidence or inferences reasonably drawn therefrom to support it. *Shively v. Shively*, 680 N.E.2d 877, 882 (Ind. Ct.App.1997). The judgment is clearly erroneous when it is unsupported by the findings of fact and conclusions entered on the findings. *Id.*

Here, in support of its argument, Bee Window relies upon *Millner v. Mumby*, 599 N.E.2d 627 (Ind.Ct.App.1992). In *Millner*, the plaintiff, who claimed he was an engineer and knew what he was doing, developed his own plans and specifications for a "berm

Thomas L. Blackburn, Richard N. Bell, Cohen & Malad, P.C., Indianapolis, for Appellant–Defendant.

David J. Ryan, W. Rudolph Steckler, Steckler & Ryan, Indianapolis, for Appellees–Plaintiffs.

### OPINION

STATON, Judge.

Indianapolis Blood Plasma, Inc. owned a building at 502 North Capitol Avenue in Indianapolis, and Stough Enterprises, Inc. was its management corporation. Michael Stough served as president of both corporations. In 1983, Bee Window, Inc. ("Bee Window"), Stough Enterprises, Inc. and Michael Stough entered into a contract whereby Bee Window would furnish and install twenty-three windows and perform incidental work at the Capitol Avenue building for the sum of $37,585.00.

Bee Window fabricated the windows on site using raw materials including lumber, glass, "coil stock" and thermoplastic (vinyl) framing material manufactured by Artek In-

1. Apparently, at the time of trial, Artek Industries      was no longer in business.

house," a structure built into embanked earth. *Id.* at 628. Those specifications were written into an agreement with the defendant, a concrete contractor, who poured concrete walls in accordance with the plaintiff's plans. After completion of the house, the walls began to develop cracks, and the plaintiff sued. The trial court found for the contractor. We affirmed that decision reasoning, "We will not require [the contractor] to pay for doing exactly what [the plaintiff] required of him." *Id.* at 630.

■ *Millner* is distinguishable. In the case at bar, Stough specified only that the new windows retain an aesthetic vertical and horizontal pattern. Bee Window does not suggest that vinyl was the only material that would support that pattern. The record shows that Michael Stough sought bids for aluminum windows. Bee Window recommended a vinyl window frame which "would perform in a superior way to aluminum." Stough accepted Bee Window's proposal because of the "durability and quality of the windows as represented to [him]." Clearly, Stough did not "develop" the plan to use vinyl in the window framing.

Nor did Stough supply the specifications for constructing the windows. The contract provides that "Artek units" will be "fabricated to manufacturer's specifications," not those of Stough. In an apparent attempt to minimize Bee Window's role, its president testified the company installed the windows in conformance with specific design specifications provided by Artek and agreed to by Stough. The trial court was free to accept or reject Bee Window's testimony regarding the existence of and compliance with a specific design. In either event, Stough did not develop technical specifications.

In this case, the parties agreed that Bee Window would provide windows for twenty-three openings. Inherent in that agreement was an understanding that the windows would function as windows. Yet the record indicates they leaked rain, deflected inward and outward with changes in air pressure,

failed to meet building code regulations and, more compelling, created a serious threat to life because they could explode or implode into razor-sharp pieces of glass. The trial court's ruling that Bee Window breached its contract with Stough is not clearly erroneous.

## II.

### *Damages*

Bee Window also maintains the $45,615.00 damage award is excessive. Specifically, Bee Window argues that the trial court should have considered Stough's "beneficial use" of the defective windows for thirteen years and decreased the damage award accordingly. Stough counters that the window system was actually a liability. Stough also points out that Bee Window had the use of its $35,000.00 payment for those thirteen years and argues that Bee Window should not be rewarded for its refusal to remedy its breach when it was originally notified of the defective window system.

■ A damage award is not excessive unless the amount cannot be explained upon any basis other than prejudice, passion, partiality, corruption, or some other improper element. *4–D Bldgs., Inc. v. Palmore,* 688 N.E.2d 918, 921 (Ind.Ct.App.1997) (citing *Fowler v. Campbell,* 612 N.E.2d 596, 603 (Ind.Ct.App.1993)). Although no particular degree of mathematical certainty is required in awarding damages, the award must be within the scope of the evidence. *Colonial Discount Corp. v. Berkhardt,* 435 N.E.2d 65, 67 (Ind.Ct.App.1982).

■ The record includes Exhibit 13, a proposal to remove and replace the window system for a fee of $48,220.00. In fashioning the damage award, the trial court accepted Exhibit 13, the lowest bid submitted, then deducted from that amount $2,585.00, the balance Stough owed on the original contract, and arrived at its award of $45,615.00.[2] The court specifically concluded the "nonconforming and dangerous replacement windows" had no value and, in fact, subjected Stough to

---

**2.** In its findings, the court acknowledges that the bid for replacement windows was $48,220.00; however, in its conclusions the court represented the bid as $48,200.00. The court used this latter figure in computing the damage award which resulted in an award of $45,615.00 rather than $45,635.00. Neither party complains of this $20.00 difference, and we find it *de minimis.*

"the threat of tremendous tort liability[.]" We cannot say this conclusion is erroneous. Although Bee Window also complains the aluminum windows Stough would receive under the proposal are more expensive than vinyl windows, it presented no evidence that suitable replacement windows constructed from alternative materials could be installed for less. We conclude that the award of $45,615.00 lies within the scope of the evidence. Finding no error, we affirm the damage award.

Affirmed.

HOFFMAN and RUCKER, JJ., concur.