Basia ENGLAND, Appellant–Defendant,

v.

Lori ALICEA, Appellee–Plaintiff.

No. 64A03–0409–CV–409.

Court of Appeals of Indiana.

May 10, 2005.

Donald W. Rice, Portage, IN, Attorney for Appellant.

David A. Mack, Esq., Costas Law Offices, P.C., Valparaiso, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Basia England (Basia) appeals the trial court's judgment in this real estate partition action finding that the interest of appellee-plaintiff Lori Alicea (Alicea) in the real estate is $55,402.95. Specifically, Basia contends that the trial court erred in awarding Alicea credit for improvements made to the property, giving Alicea 100% credit for contributions for taxes and principal reduction, awarding Alicea attorney's fees, not allowing a set off for the value of rents and profits, and failing to give credit to co-defendant Michael England (England) for a $5,339.34 payment that he made to Alicea. Finding that the trial court erred in awarding attorney's fees and in failing to give a credit for the rental value and for payments that England made, we reverse and remand.

### FACTS

In essence, this case is a dispute between two former wives of England over the partition of real estate owned by England and Alicea as tenants in common. The following facts were established by stipulation of the parties at the trial level. Alicea and England were divorced on May 31, 1991. During their marriage, Alicea and England owned real estate in Valparaiso as tenants by the entireties.

Pursuant to the 1991 Decree, England and Alicea became tenants in common, and he could retain the property if he paid her the sum of $5,339.34 within forty-five days from June 21, 1991, for her equity interest in the real estate. If he did not do so, the real estate was to be listed for sale with an agreed-upon realtor, with the proceeds of the sale split between them. The 1991 Decree also ordered that England was to be responsible for the costs of finishing remodeling the real estate in order to make it suitable for sale. The 1991 Decree further provided that England would hold Alicea harmless from any claim made against her as a result of her name being on the mortgage and that he would be given credit for any principal reduction made by him while the real estate was listed for sale if it sold more than forty-five days after the date of the Decree. England failed to pay Alicea the sum representing her interest within forty-five days, and he failed to cooperate in listing the real estate for sale.

On November 28, 1995, the Porter Superior Court, Room II issued an order finding England in contempt of court for allowing an arrearage to accumulate on the mortgage payments, failing to pay child support as ordered, failing to complete the remodeling and sale of the real estate, and failing to satisfy the IRS lien against the real estate, resulting in $2,071 of Alicea's tax refunds being intercepted over three years to satisfy the lien. The 1995 Order recognized Alicea's continued interest in the real estate and provided that "the monies intercepted by the Internal Revenue Service shall be considered a first lien on the proceeds of the marital residence and upon sale of the marital residence, shall be distributed to the Wife [Alicea] immediately prior to distribution of any other proceeds from the sale of the marital residence." Appellee's App. p. 85.

Shortly after the dissolution of England and Alicea's marriage, England married Basia. England's marriage to Basia was dissolved on May 3, 1996. The 1996 Decree awarded a judgment against England in favor of Basia in the amount of $19,475. England vacated the real estate no later than May 1996, and he ceased making mortgage payments on it. Prior to that, England made mortgage payments from May 1991 to May 1996 that reduced the principal owed on the mortgage by $2,671.

Sometime between July 1996 and September 1996, Alicea took possession of the real estate and paid the mortgage arrearage in the sum of $1,344. Alicea then made all of the mortgage payments up through the date of the trial court's order in the present matter, reducing the principal balance on the mortgage by $7,712. After taking possession of the real estate, Alicea spent $13,135.45 for reasonable and necessary maintenance and repairs on the real estate, which was in a state of general disrepair.

On March 28, 2002, Alicea filed her Complaint for Partition of Real Estate, seeking entry of an order of partition that determined the respective ownership interests of Alicea and England. Basia was named as a defendant based on the fact that Basia had obtained a judgment against England, which constituted a lien on England's interest in the real estate. On May 1, 2002, Basia filed her answer and counter-claim for partition of the real estate and enforcement of her judgment lien against England's interest in the real estate.

On November 21, 2003, Alicea and Basia appeared for the bench trial. England failed to appear and was defaulted. The parties entered into a written stipulation of facts, which was approved by the trial court and received into evidence. On March 9, 2004, the trial court entered its

judgment, which included extensive findings of fact and conclusions of law. The trial court determined that the real estate was not subject to being divided. The trial court calculated England's interest in the real estate as follows:

| | | |
|---|---|---|
| Fair Market Value of Real Estate | $90,000.00 | |
| Mortgage Balance Due | (29,117.63) | |
| Equity | $60,882.37 | |
| 1/2 Equity | $30,441.00 | |
| Owed to Lori Alicea for Improvements | (13,135.45) | (1991 Decree) |
| Owed to Lori Alicea for Taxes | ( 2,071.00) | (1995 Order) |
| Owed to Lori Alicea for Attorney's Fees | ( 4,714.50) | (1991 Decree) |
| Owed to Michael England for Principal Reduction from 5/91 to 5/96 | 2,671.00 | (1991 Decree) |
| Owed to Lori Alicea for Principal Reduction from 7/96 to 11/03 | ( 7,712.00) | |
| England's interest | $ 5,479.05 | |

Appellee's App. p. 94. The remaining equity, $55,403.32, was awarded to Alicea. On April 7, 2004, Basia filed a motion to correct errors, which the trial court denied on August 23, 2004. Basia now appeals.

### DISCUSSION AND DECISION

■ Basia contends that the trial court erred in its calculation of England and Alicea's respective interests in the real estate. Specifically, Basia contends that the trial court erred in awarding Alicea credit for improvements, giving Alicea 100% credit for taxes and principal reduction after splitting the equity equally, awarding Alicea attorney's fees, not allowing a set off for the value of rents and profits, and failing to give credit to England for a $5,339.34 payment that he made to Alicea.

■ Where, as here, the trial court enters specific findings of fact and conclusions of law, we employ a two-tiered standard of review. First, we determine whether the evidence supports the findings; then we determine whether the findings support the judgment. *Butler Univ. v. Unsupervised Estate of Verdak*, 815 N.E.2d 185, 190 (Ind.Ct.App.2004). However, inasmuch as stipulated facts are conclusive upon both the parties and the tribunal, the findings of fact may not be challenged upon appeal. *Wayne Township v. Lutheran Hosp. of Fort Wayne, Inc.*, 590 N.E.2d 1130, 1133 (Ind. Ct.App.1992). Thus, we will only look to the conclusions of law and whether the findings and conclusions support the judgment. We will consider only the evidence and reasonable inferences flowing therefrom that support the trial court's judgment, and we will not reweigh the evidence. *Id.* We will only disturb the judgment if we determine that it is clearly erroneous, meaning that there are no facts or inferences supporting it. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.*

Both Basia and Alicea agree that *Janik v. Janik*, 474 N.E.2d 1054 (Ind.Ct.App. 1985), is the controlling case on this issue. In *Janik*, Husband and Wife were awarded a one-half interest in the marital home as tenants in common pursuant to their dissolution decree. The decree also awarded Wife the exclusive right to possession of the marital home until the couple's youngest child was emancipated, and

it imposed the responsibility of paying the mortgage payments on Wife. *Id.* at 1056. Husband filed a partition suit three years after the youngest child was emancipated. The trial court credited Wife for the total mortgage payments that she made, for the total cost of improvements and repairs she made to the real estate, and for tax and insurance payments she made after emancipation of their youngest child. This court reversed, finding that Wife was only entitled to a credit for the increased fair market value of the home as a result of the improvements and repairs. *Id.* We also found that Wife was not entitled to any credit for the mortgage payments, in part because the obligation to make those payments had been imposed upon her by the divorce decree. *Id.* at 1057. We further determined that Wife was only entitled to a one-half credit for tax and insurance paid after the emancipation of their youngest child and that this could be set off against Husband's credit for fair market rental value of the real estate following the emancipation. *Id.* at 1057–58. We noted that, "[i]n Indiana, the partitioning court may properly set off mutual claims between the parties. If the tenant in possession makes a claim for improvements or other expenses, his co-tenant is entitled to set off rents and profits for the use and occupation for the period of his possession." *Id.* at 1058.

We find it instructive that the *Janik* court followed the terms set forth in the divorce decree to deny Wife a credit for the mortgage payments. Here, the 1991 Decree required England to make the mortgage payments and to pay for the costs to finish remodeling the real estate in order to make it suitable for sale. Thus, it was proper for the trial court to require England to reimburse Alicea for the money she expended on both of these items and the related principal reduction. The 1995 Order gave Alicea a first lien on the proceeds of the sale of the marital residence in order to reimburse her for her tax refunds that were intercepted in order to pay the IRS for England's failure to pay taxes. Therefore, the trial court was correct to award 100% of that cost to Alicea.

■ The award of attorney's fees, however, is another matter. The general rule in Indiana is that attorney's fees are not allowed in the absence of a statute or an agreement or stipulation specially authorizing the allowance. *Wilson Leasing Co. v. Gadberry,* 437 N.E.2d 500, 500 (Ind. Ct.App.1982). Indemnification clauses in a contract are strictly construed and the terms are required to be set forth in clear and unequivocal terms. *Id.* In other words, if the indemnification clause at issue does not specifically say that it includes attorney's fees, they are excluded.

Here, the trial court based Alicea's credit for attorney's fees on the following language from paragraph twelve of the 1991 Decree: "The Respondent [England] will further hold the Petitioner [Alicea] harmless from any claim made against her as a result of her name being on the mortgage." Appellee's App. p. 51. The only time that attorney's fees are mentioned in the 1991 Decree is in paragraph eleven, which states, "That each party shall be individually responsible for the balance of their attorney fees." *Id.* The 1995 Order did not change England and Alicea's responsibilities with respect to attorney's fees. Thus, we are compelled to agree with Basia that it was error to award credit for attorney's fees to Alicea. The state of the law is such that Alicea can be harmed by being forced to spend money on attorneys to hold England accountable for his actions, in spite of the trial court's order that England hold Alicea harmless. Therefore, we must assume that the trial court did not intend to include attorney's

fees in this provision because it did not specifically so provide. As a result, we encourage attorneys and trial courts to be careful to specifically list the costs of collection and attorney's fees in indemnification clauses if it is their intention to include such fees.

 Basia also complains that the trial court failed to credit England and Alicea with the fair rental value of the property during the time that each of them occupied the real estate to the exclusion of the other. We again note that *Janik* stands for the proposition that, "If the tenant in possession makes a claim for improvements or other expenses, his co-tenant is entitled to set off rents and profits for the use and occupation for the period of his possession." *Janik,* 474 N.E.2d at 1058. Both Alicea and England, who were tenants in common, were the sole occupants of the premises at different times. Alicea was the occupant for eighty-nine months, and England was the occupant for sixty-two months. The parties agreed that the fair rental value of the real estate was $800. Appellee's App. p. 74. Thus, each is entitled to a credit of half of the rental value for the time the other occupied the premises.

Finally, although not mentioned in the Appellee's Brief, Alicea conceded in her response to Basia's motion to correct errors that the trial court erred in failing to include a credit to England for payments that he made to her in the sum of $5,339.34. Appellee's App. p. 115. We accept this concession and will include this credit in our calculations.

In sum, the proper calculation of England's interest is as follows:

| | |
|---|---:|
| Fair Market Value of Real Estate | $90,000.00 |
| Mortgage Balance Due | (29,117.63) |
| Equity | $60,882.37 |
| 1/2 Equity | $30,441.00 |
| Owed to Alicea for Improvements | (13,135.45) |
| Owed to Alicea for Taxes | ( 2,071.00) |
| Owed to England for Principal Reduction from 5/91 to 5/96 | 2,671.00 |
| Owed to Alicea for Principal Reduction from 7/96 to 11/03 | ( 7,712.00) |
| Owed to Alicea for Rental Value during England's occupancy for 62 months | (24,800.00) |
| Owed to England for Rental Value during Alicea's occupancy for 89 months | 35,600.00 |
| Owed to England for payments to Alicea | 5,339.34 |
| England's interest | $26,332.89 |

The judgment of the trial court is reversed and remanded for entry of an order consistent with this opinion.

KIRSCH, C.J., and BARNES, J., concur.