

FILED

Jul 13 2023, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Z.C.
Simpsonville, South Caroline

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Z.C.,

*Appellant-Respondent,*

v.

Review Board of the Indiana
Department of Workforce
Development,

*Appellee-Petitioner.*

July 13, 2023

Court of Appeals Case No.
23A-EX-377

Appeal from the Review Board of
the Indiana Department of
Workforce Development

Gabriel Paul, Chairman
Lawrence A. Dailey, Member
Heather D. Cummings, Member

No. 23-R-283

**Opinion by Judge Bradford**
Judges Riley and Weissmann concur.

**Bradford, Judge.**

# Case Summary

[1] Z.C. received unemployment benefits from the Indiana Department of Workforce Development ("the Department"); however, Z.C. had underreported his wages to the Department resulting in the overpayment of benefits. An administrative law judge ("ALJ") and the Review Board of the Indiana Department of Workforce Development ("the Review Board") determined that Z.C. was required to repay the overpayments. Z.C. requested a waiver of repayment, which the Department denied. Z.C. appealed to ALJ E. Page Prentice, who affirmed the Department's decision. Z.C. appealed ALJ Prentice's decision to the Review Board, which affirmed the decision. Now, Z.C. argues that the Review Board erred in affirming ALJ Prentice's decision that he is ineligible for a waiver under the repayment-waiver statute; he is entitled to waiver on equitable estoppel grounds, he qualifies for accommodation under the Americans with Disabilities Act ("the ADA"); he qualifies for a waiver under the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"); the Department was negligent in performing its work, and the Department's exchange of exhibits was untimely. We affirm.

# Facts and Procedural History

[2] During 2020 and 2021, Z.C. intermittently taught online courses for multiple universities. Z.C. taught courses for eight or fifteen weeks and was paid for each course. Beginning in February of 2020, Z.C. began collecting unemployment insurance ("UI") benefits after having been laid off by his full-

time employer in 2019. (Appellee's App. Vol. II p. 3) By November of 2020, Z.C. had exhausted his UI benefits, at which point he transitioned to receiving pandemic emergency unemployment compensation ("PEUC"), federal pandemic unemployment compensation ("FPUC"), and lost wages assistance ("LWA") benefits.

[3] For each week Z.C. sought benefits, he completed claim forms. On those forms, he verified that he had "report[ed] the work and the gross amount of the earnings [he] ha[s] or will receive at some future date for that work" on the voucher for the week that he had performed the work, regardless of when he would be paid. Appellee's App. Vol. II p. 3. Z.C. also verified that he had read the Claimant's Handbook, which "advises claimants that they must report their earnings from wages on the voucher(s) for the week in which the work was performed and the wages were earned." Appellee's App. Vol. II p. 3. Further, Z.C. called the Department on multiple occasions "to seek guidance on how to report his wages from the online courses," and he claims that he had "received different guidance from different representatives." Appellee's App. Vol. II p. 3.

[4] Throughout 2020 and 2021, when Z.C. reported his wages, he "treat[ed] the wages from the course(s) as though they were the only course(s) he would teach for the year" and "divided his wages by fifty-two weeks" instead of reporting the specific weeks that he had worked under one or more of his contracts. Appellee's App. Vol. II p. 3. Consequently, in July of 2022, the Department notified Z.C. that he had not properly reported his earnings on multiple weeks in 2020 and 2021; therefore, the Department had determined that Z.C. had

been overpaid benefits. In August of 2022, Z.C. appealed the Department's determination that he had been overpaid. After an evidentiary hearing that same month, ALJ Tracey Buzzard determined that Z.C. had, in fact, been overpaid after misreporting his earnings. Z.C. appealed that decision to the Review Board, which affirmed ALJ Buzzard's decision. On September 25, 2022, after Z.C. had decided not to appeal that decision to this court, the Review Board's decision became a final judgment. Altogether, Z.C. had received $39,046.00 in overpayments.

[5]     Also in July of 2022, Z.C. requested a waiver of his obligation to repay the overpayments. In October of 2022, the Department denied Z.C.'s request, explaining that he did not meet the statutory criteria to receive a waiver. Namely, the Department determined that Z.C. had not been "without fault for the overpayment" of PEUC, FPUC, and LWA benefits, and that he was ineligible for waiver of his UI benefits because his employers had elected "to make payments in lieu of contributions[.]" Appellee's App. Vol. II p. 54. Z.C. appealed that decision to ALJ Prentice who affirmed the Department's denial of Z.C.'s waiver. In doing so, ALJ Prentice found that Z.C.'s reporting method had failed to adhere to the instructions about disclosing part-time work and, to the extent that Z.C. had received contrary guidance during his calls with the Department, that guidance had been mistaken and did not relieve Z.C. of his responsibility to repay because he had had access to the correct information for reporting part-time work. ALJ Prentice concluded that Z.C. was ineligible for a waiver because (1) two of Z.C.'s employers had elected "to make payments in

lieu of contributions" to the State-monitored unemployment insurance fund and (2) Z.C. was at fault for the overpayments. Appellee's App. Vol. II p. 8.

[6] On January 31, 2023, Z.C. appealed ALJ Prentice's decision. The following month, the Review Board adopted ALJ Prentice's factual findings and legal conclusions and affirmed the decision to deny Z.C.'s request for a waiver.

# Discussion and Decision[1]

[7] When reviewing a decision of the Review Board, our standard of review is threefold: "(1) findings of basic fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact [...] are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness." *Recker v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 958 N.E.2d 1136, 1139 (Ind. 2011) (citing *McClain v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1318 (Ind. 1998)). Further, "[w]e neither reweigh evidence nor judge the credibility of witnesses; rather, we consider only the evidence most favorable to the Review Board's findings." *J.M. v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 975 N.E.2d 1283, 1286 (Ind. 2012) (citing *McClain*, 693 N.E.2d at 1318)). We will reverse the Review Board's decision "only if there is no substantial evidence to

---

[1] As an initial matter, we note that Z.C. has failed to include in his brief the appropriate standard of review in violation of Indiana Appellate Rule 46(A)(8)(b); however, our "discretionary authority over the appellate rules allows us to achieve our preference for decid[ing] cases on their merits rather than dismissing them on procedural grounds." *In re D.J. v. Ind. Dep't of Child Servs.*, 68 N.E.3d 574, 579 (Ind. 2017) (internal citation and quotations omitted).

support the Review Board's findings." *Id*. Additionally, we note that Z.C. does not challenge any of ALJ Prentice's factual findings in the order denying his waiver request. We accept unchallenged factual findings as true. *See Moriarty v. Moriarty*, 150 N.E.3d 616, 627 (Ind. Ct. App. 2020) (citing *Henderson v. Henderson*, 139 N.E.3d 227, 232 (Ind. Ct. App. 2019)), *trans. denied*.

# I.    Indiana Code 22-4-13-1(i):  Repayment Waiver

[8]    Z.C. argues that he qualifies for an overpayment waiver based on Indiana Code section 22-4-13-1(i). That section provides that:

> (i) Liability for the repayment of benefits paid to an individual (other than an individual employed by an employer electing to make payments in lieu of contributions [to the State unemployment insurance benefit fund]) for any week may be waived […] if:
>
> (1) the benefits were received by the individual without fault of the individual;
>
> (2) the benefits were the result of payments made:  […]
>
>        (B) because of an error by the employer or the department; and
>
> (3) repayment would cause economic hardship to the individual.

Ind. Code § 22-4-13-1(i).

[9]    We agree with the Review Board's determination that Z.C. is not entitled to a repayment waiver under Indiana Code section 22-4-13-1(i). To start, Z.C. was ineligible for a waiver for his UI benefits overpayment because two of his previous employers had elected "to make payments in lieu of contributions" to

the State unemployment insurance benefit fund, *i.e.*, they are "reimbursable employer[s]." Ind. Code § 22-4-13-1(i); Appellee's App. Vol. II p. 8. Specifically, Regent University, Liberty University, and Taylor University had employed Z.C. during the periods in which he made claims and "Liberty University and Taylor University are reimbursable employers." Appellee's App. Vol. II p. 9. The unchallenged facts establish that Liberty and Taylor Universities are categorized as "reimbursable employers" which made "payments in lieu of contributions" and are therefore not waiver-eligible employers under Indiana Code section 22-4-13-1(i). Appellee's App. Vol. II p. 8; Ind. Code § 22-4-13-1(i). Consequently, and because Indiana Code section 22-4-13-1(i) is written in the conjunctive, Z.C. does not qualify for a waiver of repayment for the excess UI benefits he received. *See Baker v. Town of Middlebury*, 753 N.E.2d 67, 74 (Ind. Ct. App. 2001) (noting that a statute written in the conjunctive means that a claimant must meet each element to be successful under the statute), *trans. denied*.

[10] Additionally, we agree with the Review Board's conclusion that Z.C. is not eligible for a repayment waiver of his PEUC, FPUC, and LWA benefits. This is a mixed question of law and fact which we review for reasonableness. *J.M.*, 975 N.E.2d at 1288. The Review Board's decision here was reasonable. For instance, Indiana Code section 22-4-13-1(i)(1) provides that an individual cannot be eligible for a waiver if he is at fault for the overpayment. Further, each federal-benefit program enables the Department to consider whether to grant a waiver if a claimant meets certain requirements. The federal statutes

governing PEUC, FPUC, and LWA all enable the Department to waive repayment if it determines that "the payment of [PEUC benefits] was without fault on the part of [the claimant]"; "the payment of [FPUC benefits] or Mixed Earner Unemployment Compensation was without fault on the part of [the claimant]"; and "the payment of [LWA benefits] was without fault on the part of [the claimant.]"  15 U.S.C. §§ 9025(e)(2), 9023(f)(2), and 9021(d)(4).

[11]  Here, the unchallenged findings establish that Z.C. reported his wages incorrectly despite his having access to the correct information.  When reporting his wages, Z.C. divided his contract wages by fifty-two weeks instead of by the number of weeks that he had worked under each contract, leading to his "underreport[ing] his wages on the vouchers for multiple weeks."  Appellee's App. Vol. II p. 8.  Moreover, in accordance with the benefits application, Z.C. had to read and sign a Benefit Rights Agreement, which had included the requirement to report his wages and that he read the Claimant's Handbook, which contained another advisement regarding wage reporting.  Despite these advisements, Z.C. incorrectly reported his wages.  ALJ Prentice found, and the Review Board agreed, that Z.C.'s "failure to follow the instructions provided to him during the claim application process and in the Claimant Handbook and the resulting under-reporting of wages […] constituted 'fault' for the overpayment of benefits."  Appellee's App. Vol. II p. 9.

[12]  Because Z.C. had access to the correct information, and had, in fact, "read the Benefit Rights Agreements and added his initials to each advisement[,]" and "read the Claimant Handbook[,]" the Review Board reasonably concluded that

he had been at fault for misreporting his wages. Appellee's App. Vol. II p. 8. There is substantial evidence to support the Review Board's decision and any argument to the contrary is simply a request that we reweigh the evidence, which we will not do. *J.M.*, 975 N.E.2d at 1286.

## II. Non-Waiver Statute Arguments

### A. Estoppel

[13] Z.C. "claims equitable estoppel against [the Department] based on [its] Call Center's fiduciary failure[,]" or "misguidance and misinterpretations" of its handbook. Appellant's Br. p. 8. Specifically, he argues that our holding in *DenniStarr Environmental v. Indiana Department of Environmental Management*, 741 N.E.2d 1284 (Ind. Ct. App. 2001), *trans. denied*, does not necessarily mean that courts are prohibited from applying estoppel against the government, only that they are reluctant to do so. Consequently, Z.C. argues that the Department should be estopped from denying his waiver because representatives of the Department misinformed him about the wage-reporting process during his multiple phone calls with the Department. Again, we disagree.

[14] In *DenniStarr*, we denied the application of estoppel when a plaintiff alleged that a state agency employee assured it that reimbursement for a remediation would be available but ultimately was not. *Id.* at 1289. In rejecting the plaintiff's estoppel claim, we noted that "[c]ourts are reluctant to apply estoppel against the government where a party claiming to have been ignorant of the facts had access to the correct information." *Id.* at 1290 (citing *U.S. Outdoor Advert. Co. v.*

*Ind. Dep't of Transp.*, 714 N.E.2d 1244, 1260 (Ind. Ct. App. 1999), *trans. denied*). Further, we concluded that "misinformation provided by a government employee is not a basis for estoppel because the government could be precluded from functioning if it were bound by its employees' unauthorized representations." *Id*. at 1289–90 (citing *Nat'l Salvage & Serv. Corp. v. Comm'r of Ind. Dep't of Env't Mgmt.*, 571 N.E.2d 548, 556 (Ind. Ct. App. 2001), *trans. denied*). To conclude otherwise, we reasoned, "would grant incentive to entities to ignore the legal obligations provided by statute and rely on misinformation received from governmental employees." *Id*. at 1290.

[15] Here, ALJ Prentice and the Review Board properly relied on *DenniStarr* in denying Z.C.'s request for a waiver, despite any alleged misinformation provided by the Department's call center representatives. Like the plaintiff in *DenniStarr*, Z.C. had access to the correct information. In fact, Z.C. acknowledged that he had read the Claimant's Handbook and the Benefit Rights Agreements, which advised him of the process for reporting his wages multiple times. As a result, ALJ Prentice and the Review Board reasonably concluded that Z.C. was at fault for the overpayment, and we are likewise reluctant to apply estoppel when Z.C. had access to the correct reporting information. Z.C.'s argument to the contrary is essentially a request that we reweigh the evidence, which we will not do. *J.M.*, 975 N.E.2d at 1286.

## B.    ADA Accommodation

[16]    The ADA requires that government agencies not exclude any individual with a disability from participating in, or receiving benefits from, a public entity's service program or activity because of that individual's disability.  42 U.S.C. §§ 12131–12165; *see also Perdue v. Gargano*, 964 N.E.2d 825, 843 (Ind. 2012).  Z.C. argues that he has been diagnosed "by a licensed physician and clinician as suffering from two clinical disorders."  Appellant's Br. p. 13.  Therefore, he argues, it "stands to reason, based on [the Department]'s Theme and Goals […] that the [Department] would have eagerly sought to provide confidently accurate information when Z.C. disclosed his mental infirmities."  Appellant's Br. p. 13.  However, this issue is waived for failure to make a cogent argument or include citations to the record.

[17]    Indiana Appellate Rule 46(A)(8)(a) provides that a party's argument must be "supported by cogent reasoning" and must include "citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[.]"  Z.C.'s argument on this point is devoid of any reference to the record.  While Z.C. is acting *pro se*, our case law is clear:  "*pro se* litigants are held to the same standards as licensed attorneys, and thus they are required to follow the procedural rules."  *Martin v. Hunt*, 130 N.E.3d 135, 137 (Ind. Ct. App. 2019) (citing *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*) (emphasis added).  Consequently, a *pro se* litigant "must be prepared to accept the consequences of his or her action."  *Ramsey v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 789 N.E.2d 486, 487 (Ind. Ct. App. 2003) (citing *Mullis v.*

*Martin,* 615 N.E.2d 498, 500 (Ind. Ct. App. 1993)). Put simply, neither ALJ Prentice nor the Review Board found that Z.C. had a disability, and Z.C. does not point to anything in the record indicating that he had argued the issue below. Therefore, the issue is waived.

## C.    The CARES Act

[18]    In arguing that he is eligible for a repayment waiver under the CARES Act, Z.C. relies on letter issued by the U.S. Department of Labor addressing certain scenarios in which states may apply waivers of repayment obligations. Specifically, Z.C. argues that he "'submitted required proof of earnings used to calculate Pandemic Unemployment Assistance Weekly Benefit Amount and the State incorrectly processed the calculation resulting in a higher weekly benefit amount under the PUA program.'"  Appellant's Br. p. 14 (quoting U.S. Dep't of Labor, Unemployment Insurance Program Letter No. 20-21 (May 5, 2021), https://www.dol.gov/agencies/eta/advisories/unemployment-insuranceprogram-letter-no-20-21). Thus, Z.C. argues that "[he] qualifies." *Id.*

[19]    We, however, disagree. Again, we note that Z.C. has failed to make an argument "supported by cogent reasoning" and "citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on[,]" thereby waiving this issue for appellate review. Ind. App. R. 46(A)(8)(a). We will not address arguments which are not developed and will not develop arguments for a party to an appeal. *Hay v. Hay*, 885 N.E.2d 21, 24 n.2 (Ind. Ct. App. 2008) (citing Ind. App. R. 46); *Stark v. State*, 204 N.E.3d 957, 963 (Ind. Ct.

App. 2023).  Z.C.'s bald assertion that "[he] qualifies[,]" without more, results in waiver.  Appellant's Br. p. 14.

## D.    The Department's Alleged Negligence and Mismanagement

Z.C. claims that he should be eligible for a waiver due to the Department's "negligence, mismanagement, disorganization, [and] irresponsibility[.]"  Appellant's Br. p. 16.  Specifically, Z.C. argues that (1) the Department failed to review quarterly employment reports quickly enough that it could have discovered Z.C.'s misreporting sooner; (2) the Department never provided him with records of his telephone calls with Department representatives, and "based on several contradictory statements […] it is impossible to know whether the [Department] had or has access to [those] call records […] from early 2020"; and (3) that "Indianapolis news stations […] have comprehensively and consistently investigated the [Department] based on complaints received by Hoosiers concerning its negligence, mismanagement, disorganization, and irresponsibility."  Appellant's Br. pp. 11, 15–16.

To start, Z.C. contends that, at his hearing, a representative of the Department had explained that "employment verification […] occurs quarterly."  Appellant's Br. p. 11.  Z.C. claims that had the Department followed its own policy, it would have discovered that Z.C. was misreporting his wages and could have deemed him ineligible for benefits after merely twelve weeks—not eighty-five—and his overpayment balance would be nearly $33,000.00 less.  According to Z.C., the Department's failure to follow its own "policy and

procedure led to this predicament."  Appellant's Br. p. 12.  We, however, disagree.

[22]     Contrary to Z.C.'s argument, the Department discovered the overpayment and sought repayment within the statutory timeframe.  Indiana Code section 22-4-13-1(a)(1) provides that "the [D]epartment has four (4) years from the date of [its] discovery of the overpayment to send notification to the individual of possible overpayment[.]"  Here, Z.C. began receiving benefits in February of 2020 and the Department Z.C. notified Z.C. that he had been overpaid in July of 2022.  Therefore, the Department was clearly within the statutory timeframe during which it could notify Z.C. of the overpayment and begin seeking repayment.

[23]     Moreover, Z.C.'s argument that he received no records of his telephone calls with representatives of the Department is unavailing.  Z.C. explains that "each time [he] called" the Department and the representatives gave him "quick, but confident reassurance for how [he] was completing weekly wages earned[.]"  Appellant's Br. p. 15.  Z.C. claims that some of the Department's call center representatives informed him that the Department purged phone records after two years and others informed him that some records from early 2020 may be accessible.  Again, Z.C. fails to support his argument with citations to the record or to relevant authorities; therefore, the issue is waived.  *See* Ind. R. App. 46(A)(8); *Ramsey*, 789 N.E.2d at 490.  Waiver aside, we have already determined that ALJ Prentice and the Review Board reasonably concluded that Z.C. was at fault because he had access to, and acknowledged that he had read,

the correct wage-reporting procedures in the Claimant Handbook and the Benefit Rights Agreements.

[24] Further, Z.C. lists a series of news stories relating to "complaints by Hoosiers concerning [the Department's] negligence, mismanagement, disorganization, and irresponsibility." Appellant's Br. p. 16. Without arguing how the Department's alleged negligence affected him specifically, Z.C. asks us to "consider the [news stories] as supporting evidence of [the Department's] recent history of negligence, mismanagement, disorganization and irresponsibility." Appellant's Br. p. 16. Z.C. has also waived his argument on this point for failing to develop it. *See Hay*, 885 N.E.2d at 24.

### E. Timely Exchange of Exhibits

[25] Lastly, Z.C. argues that the Department failed to provide him with an exhibit list before the waiver hearing scheduled for January 3, 2023, which was later rescheduled for January 11, 2023. Z.C.'s argument on this issue lacks any citations to facts in the record supporting this contention; therefore, he has waived this issue for appellate review. *Price v. Rev. Bd. of Ind. Dep't of Workforce Dev.*, 2 N.E.3d 13, 16 (Ind. Ct. App. 2013). Ultimately, Z.C. asks us to reweigh the evidence, which we will not do. *J.M.,* 975 N.E.2d at 1286. Reviewing all evidence most favorably to the Review Board's conclusion, we cannot say that its decision is unsupported by substantial evidence. *Id.*

[26] The judgment of the Review Board is affirmed.

Riley, J., and Weissmann, J., concur.